UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN JOHNSON,

       Plaintiff,

v.

S. LANDFAIR, AUSTIN, J.
CZARWIOWSKI, PATRICIA LAMB,
and K. NADER,

       Defendants.
_____/

Case No. 4:21-cv-12704
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION**[1]
**TO GRANT THE MDOC DEFENDANTS' MOTION TO DISMISS OR
ALTERNATIVELY FOR SUMMARY JUDGMENT (ECF No. 27)
AND
TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT WITH PREJUDICE AS TO LANDFAIR
AND
TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT WITHOUT PREJUDICE AS TO AUSTIN (ECF No. 36)**

I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  Plaintiff Darren

Johnson (Johnson), proceeding *pro se*, is suing defendants S. Landfair (Landfair),

---

[1] Upon review of the parties' papers, the undersigned deems these matters
appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D.
Mich. LR 7.1(f)(2).

Austin, J. Czarwiowski (Czarwiowski), Patricia Lamb (Lamb), and K. Nader (Nader) alleging violations of his Eighth Amendment rights related to the treatment of his thyroid condition.  *See* ECF No. 1.  Landfair, Czarwiowski, Lamb, and Nader are all employees of the Michigan Department of Corrections (the MDOC defendants).  Austin is employed by Corizon Health, Inc. (Corizon).  Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned.  (ECF No. 13).

Before the Court are the MDOC defendants' motion to dismiss or alternatively for summary judgment on the basis of exhaustion, (ECF No. 27), and Johnson's motion for partial summary judgment against Landfair and Austin, (ECF No. 36).  Both motions have been fully briefed.  (ECF Nos. 31, 32, 34, 38, 43).  For the reasons stated below, it is RECOMMENDED that the MDOC defendants' motion be GRANTED and Johnson's motion be DENIED WITH PREJUDICE as to Landfair and DENIED WITHOUT PREJUDICE as to Austin.[2]  If these

---

[2] Austin filed a motion to compel, (ECF No. 35), arguing that discovery was necessary in order to respond to Johnson's motion.  Austin also filed a motion for extension of time to file a response to Johnson's motion for partial summary judgment until the motion to compel was resolved.  (ECF No. 39).  The undersigned granted that motion.  (ECF No. 42).  Austin then filed an emergency motion to stay proceedings against her due to Corizon's bankruptcy and a potential conflict of interest in legal representation.  (ECF No. 48).  The undersigned granted the motion and stayed proceedings against Austin only for 90 days, beginning on March 3, 2023.  (ECF No. 49).  Because Austin is not required to file a response to Johnson's motion until the motion to compel is resolved and because proceedings against her have been stayed for 90 days, the undersigned RECOMMENDS that

2

recommendations are adopted, the MDOC defendants should be DISMISSED from the case, leaving Austin as the sole defendant.

## II.     Background

### A.     Complaint

The following facts are gleaned from the verified complaint and will be accepted as true when considering the MDOC's motion to dismiss.

Johnson suffers from a thyroid condition of which defendants were all aware. (ECF No., PageID.6). His thyroid condition is managed with a medication called Synthroid. (*Id.*).

In July 2021, Johnson sent Austin a kite[3] asking her to refill his Synthroid prescription. (*Id.*, PageID.8). At that time, he was taking 0.2 mg of Synthroid once per day. (*Id.*). Instead of responding to Johnson's message, Austin had one of her coworkers respond. (*Id.*). Austin ignored Johnson even though she knew that he would suffer "severe health complications" including "severe pains" if he did not take 0.2 mg of Synthroid every day. (*Id.*).

Johnson filed a Step I grievance against Austin for ignoring his kite and

---

Johnson's motion for partial summary judgment as to Austin be DENIED WIHOUT PREJUDICE.

[3] A "kite" is a form that allows inmates to communicate and get information about "just about anything," including court dates, visitors, lawyers' information, requests, complaints, or medical assistance. *See, e.g.*, *Meirs v. Ottawa Cnty.*, 821 F. App'x 445, 448 (6th Cir. 2020).

failing to timely refill his Synthroid prescription.  (*Id*.).  This grievance was rejected.  (*Id*.).

Sometime after this, Austin provided Johnson with a lower dose of Synthroid.  (*Id*.).  Johnson objected to this change, but Austin told him that he would receive no medication if he refused to take the lower dose.  (*Id.*).  Immediately after taking the reduced dose of Synthroid, Johnson began to have an "allergic reaction," causing him to break out in rashes and sores all over his body as well as experience pain in various body parts including his genitals and chest.  (*Id*.).

Johnson immediately reported these side effects to Austin, but Austin insisted that he needed to continue taking the lower dose of Synthroid.  (*Id*.).  Johnson continued to do so for about a month.  (*Id*.).  At that time, Johnson began experiencing worse side effects including blood in his urine and a heart attack.  (*Id*.).

After his heart attack, Johnson was taken to the hospital.  (*Id*.).  His treating physician noted that his thyroid levels were elevated and gave him 0.4 mg of Synthroid.  (*Id*.).  The physician told Johnson that if his thyroid levels had gotten any higher, then he likely would have ended up in a coma.  (*Id*.).

Johnson said that Austin acted unreasonably when she failed to run tests like an EKG to determine the cause of his chest pain.  (*Id*., PageID.9).  He also said that

4

the pain in his penis and testicles continued to worsen, but that Austin nevertheless refused to provide any treatment even though a lack of treatment could have caused him to need to have his penis and testicles removed.  (*Id*.).

On August 4, 2021, Johnson sent Landfair a kite, but she unreasonably ignored it.  (*Id*.).  Johnson filed a Step I grievance against Landfair, but it was rejected.  (*Id*.).

## B.    Grievance Report

The MDOC defendants attached Johnson's grievance report to their motion. (ECF No. 27-3).  This report shows that Johnson has filed numerous grievances. However, only one grievance (JCF-21-08-1272-12E1) concerns the events of this case and had a Step III response mail date predating this lawsuit.  (*Id*., PageID.192).  The Step III response for that grievance was mailed on October 18, 2021, (*Id*.), and Johnson filed this lawsuit on November 12, 2021, (ECF No. 1).

At Step I, Johnson complained that he was suffering adverse effects after his dose of thyroid medication was lowered from 200 mcg to 175 mcg and asserted that the medical department was violating his Eighth Amendment rights.  (ECF No. 27-3, PageID.209).  Notably, he did not name any particular medical official in his grievance.

The Step I respondent was Czarwiowski and Landfair was the reviewer. (*Id*., PageID.209-210).  After an investigation, Czarwiowski and Landfair

5

determined that Johnson was receiving treatment for all of his medical concerns and noted that disagreeing with a medical provider "does not support a claim of denial of care." (*Id.*, PageID.210). Accordingly, they denied Johnson's grievance. (*Id.*).

Johnson appealed the Step I denial, and Lamb responded to his appeal at Step II. (*Id.*, PageID.208). Lamb, a registered nurse, reviewed Johnson's medical record and summarized her findings as follows:

> Review of the electronic medical record reveals that [Johnson's] thyroid medication was decreased from 200mcg to 175 mcg on 7/19/2021. This change was ordered by the medical provider in response to laboratory tests results. On 7/26/2021, a request was received from [Johnson] in which he reported adverse symptoms after taking the new dose of thyroid medication. [Johnson's] concerns were addressed by a medical provider via chart review on 8/10/2021. Documentation of that review indicates that the provider was aware of [Johnson's] request to increase the dose of his thyroid medication back to .2mg (200mcg). The provider noted that Synthroid dosing is based on lab values (i.e., blood levels) and suggested that a nursing evaluation would be an appropriate next step to address [Johnson's] report of adverse symptoms. [Johnson] was evaluated by nursing on 8/21/2021 and referred to the provider. He was assessed by the provider on 8/24/2021. Multiple interventions were ordered on that date, including increasing [Johnson's] thyroid medication to 200mcg daily, an order that is still in effect. Ongoing follow-up is planned/scheduled.

(*Id.*, PageID.208). Based on her findings, Lamb upheld the Step I denial of Johnson's grievance. (*Id.*).

Johnson then appealed the Step II decision. Nader reviewed the grievance at Step III. He denied Johnson's appeal after determining that his "medication

concerns ha[d] been appropriately addressed."  (*Id.*, PageID.206).

### III.     Legal Standards

### A.     Motion to Dismiss

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").

Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-977 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. . . . [N]either may the Court 'conjure up unpled allegations[.]' " *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).

B.     Motion for Summary Judgment

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of

material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); cf. Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Johnson is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

IV.    Discussion

A.    MDOC Defendants' Motion to Dismiss

The MDOC defendants first move for dismissal on the grounds that Johnson has failed to state a plausible claim against them. In order to state a claim for relief

for a constitutional violation under § 1983, a plaintiff must "allege that the defendants were personally involved in or responsible for the alleged deprivation of his federal rights." *Nwaebo v. Hawk-Sawyer*, 100 F. App'x 367, 368 (6th Cir. 2004) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-377 (1976) and *Hall v. United States*, 704 F.2d 246, 251 (6th Cir. 1983)); *see also Frazier v. Mich.*, 41 F. App'x 762, 764 (6th Cir. 2002) ("[A] complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights.").

Johnson does not explain how Czarwiowski, Lamb, or Nader were personally involved in his medical care.  It appears that he only named them as defendants because they all played a role in reviewing and denying the grievance where he complained about his dose of Synthroid being lowered.  However, "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)); *see also Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."); *Manley v. Smith*, No. 1:11–cv–163, 2012 WL 967569, at *4 (W.D. Mich. Feb. 14, 2012), *report and recommendation adopted*, 2012 WL 967099 (W.D. Mich. 21, 2012) (recommending granting registered nurse's motion for summary judgment "whose only role involved the denial of an administrative grievance" even though

10

"plaintiff contend[ed] that [the nurse] delayed [his] access to medical care when [she] denied the grievance").

In sum, because "[p]articipation in the processing of administrative remedies does not expose a corrections employee to a claim that she acquiesced in the conduct complained of[,]" *Israfil v. Parks*,  No. 2:10–cv–132, 2011 WL 2491516, at *2 (S.D. Ohio May 2, 2011), *report and recommendation adopted*, 2011 WL 2491574 (S.D. Ohio June 22, 2011), Johnson's claims against Czarwiowski, Lamb, and Nader should be dismissed.

Johnson also names Landfair as a defendant.  However, he does so in the context of her supervisory role over Austin and her denial of his grievance.  As explained above, Landfair's involvement in the grievance process does not make her liable for any constitutional violations that Johnson may have experienced.  *See id*.  Moreover, Landfair also cannot be held liable under a theory of supervisory liability even if she knew Austin was providing Johnson with constitutionally inadequate care and nonetheless failed to intervene.  This is because "simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003); *see also Winkler v. Madison Cnty.*, 893 F.3d 877, 898 (6th Cir. 2018) (holding that mere knowledge of an inmate's medical condition was insufficient to find supervisors deliberately indifferent).  Thus, Johnson has also failed to state a claim against Landfair.

11

Because Johnson has failed to allege that Czarwiowski, Lamb, Nader, and Landfair were personally involved with his medical care, Johnson's claim against them should be dismissed.

### B.    MDOC Defendants' Motion for Summary Judgment

As an alternative to dismissal, the MDOC defendants argue that summary judgment is appropriate because Johnson failed to properly exhaust his administrative remedies against them as required under the Prison Litigation Reform Act (PLRA).  Because the undersigned recommends dismissing Czarwiowski, Lamb, Nader, and Landfair for lack of personal involvement, it is not necessary to address this alternative ground for disposing of the claims against them.  However, the exhaustion issue will be considered for the sake of completeness.

### 1.    Law

The PLRA requires prisoners to "properly" exhaust all "available" administrative remedies before filing a lawsuit challenging prison conditions.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 88-90, 93 (2006).  Proper exhaustion of administrative remedies "means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford*, 548 U.S. at 90 (emphasis in original) (internal quotation marks and citations omitted).  Requiring exhaustion gives prison officials an opportunity to

resolve disputes concerning the exercise of their responsibilities before being haled into court and produces a useful administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007). The PLRA does not detail what "proper exhaustion" entails because "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. at 218.

"Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence." *Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015). But a prisoner countering a motion alleging failure to exhaust "must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so." *Sango v. Johnson*, No. 13-12808, 2014 WL 8186701, at *5 (E.D. Mich. Oct. 29, 2014), *report and recommendation adopted*, 2015 WL 1245969 (E.D. Mich. Mar. 18, 2015). Granting summary judgment because of a failure to exhaust administrative remedies is not on the merits and thus requires dismissal without prejudice. *Adams v. Smith*, 166 F. App'x 201, 204 (6th Cir. 2006).

The MDOC has established a three-step process to review and resolve prisoner grievances, and "a grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted." *Surles v. Andison*, 678 F.3d 452, 455 (6th Cir. 2012). "Under the [Michigan] Department of Corrections' procedural rules, inmates must include the '[d]ates, times, places and names of all

13

those involved in the issue being grieved' in their initial grievance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010).  As noted by the Court in *Woodford*, one of the purposes of requiring proper exhaustion is to "provide[ ] prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94.  To be sufficient, a grievance need not "allege a specific legal theory or facts that correspond to all the required elements of a particular legal theory." *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir. 2003) *abrogated with respect to other principles by Jones v. Bock*, 549 U.S. 199 (2007).  Nonetheless, the grievance must give "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutional or statutory claim made against a defendant in a prisoner's complaint." *Id.*

Under MDOC PD 03.02.130, prisoners must provide the following information at Step I of the grievance process: "The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  MDOC PD 03.02.130 ¶ S (underscoring omitted).

Furthermore, MDOC PD 03.02.130 also sets forth time limits regarding the three-step grievance process.

> Inmates must first attempt to informally resolve a grievable issue within
> two business days of becoming aware of the issue, and then may file a

14

Step I grievance about any unresolved issues with a grievance coordinator within five business days of the attempted informal resolution. (*Id*. at ¶¶ Q, W.)  If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. (*Id*. at ¶¶ U, DD.)  If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same procedure. (*Id*. at ¶¶ U, HH.)  The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. (*Id*.)

*Moses v. Campbell*, No. 20-cv-13366, 2022 WL 2805145, at *3 (E.D. Mich. July 18, 2022).  "Generally, Step III responses will be responded to within 60 business days."  MDOC PD 03.02.130 ¶ II.  "The grievance process is exhausted once the final response is issued in Step III."  *Parker v. Turner*, No. 20-12794, 2022 WL 1787037, at *2 (E.D. Mich. June 1, 2022).

2.    Application

Here, Johnson only completed the MDOC grievance process in one relevant grievance (JCF-21-08-1272-12E1).  At Step I, Johnson grieved "the Medical Department" as a whole rather than any particular individual.  This is insufficient under MDOC policy.

As stated above, MDOC PD 03.02.130 ¶ S requires a prisoner to include the "names of all those involved in the issue being grieved."  Additionally, the Sixth Circuit has "explained that a prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the

15

PLRA—when he does not specify the names of each person from whom he seeks relief." *Mattox v. Edelman*, 851 F.3d 583, 590-591 (6th Cir. 2017).[4]  Accordingly, Czarwiowski, Lamb, Nader, and Landfair are entitled to summary judgment because Johnson did not name them in his Step I grievance and thus failed to exhaust his administrative remedies against them.

C.    Johnson's Motion for Partial Summary Judgment

In his motion, Johnson asks the Court to grant him partial summary judgment against Austin and Landfair.  As explained in footnote 2, the case is currently stayed as to Austin, so Johnson's arguments concerning her will not be considered at this time.

As to Landfair, as discussed above, Johnson has failed to state a claim against her and has not exhausted his administrative remedies against her.  Even if everything Johnson says in his verified complaint and motion are true, Landfair still cannot be held liable under § 1983.  Therefore, the Court does not need to decide whether Johnson received inadequate medical care or whether reducing his dose of Synthroid violated his Eighth Amendment rights.  Because Landfair is entitled to dismissal for failure to state a claim as well as summary judgment for failure to exhaust, it follows that Johnson cannot obtain summary judgment against

---

[4] Although *Mattox* addressed an earlier version of PD 03.02.130, it involved the interpretation of language that is identical in both the rescinded and current versions of the policy directive.

16

her.

V.    Conclusion

For the reasons set forth above, the undersigned RECOMMENDS that the

MDOC defendants' motion for summary judgment, (ECF No. 27), be GRANTED.

It is further RECOMMENDED that Johnson's motion for partial summary

judgment, (ECF No. 36), be DENIED WITH PREJUDICE as to Landfair and

DENIED WITHOUT PREJUDICE as to Austin.  If these recommendations are

adopted, all of the MDOC defendants should be DISMISSED, leaving Austin as

the sole defendant.  Johnson may renew his motion for summary judgment against

Austin after the stay is lifted and Austin's motion to compel is resolved.  *See*

footnote 2, above.

Dated: March 13, 2023                          s/Kimberly G. Altman
Detroit, Michigan                              KIMBERLY G. ALTMAN
                                               United States Magistrate Judge


**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and

Recommendation.  Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &

Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991).  Filing objections that raise some

17

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on March 13, 2023.

s/Carolyn Ciesla
CAROLYN CIESLA
Case Manager

18