UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARREN JOHNSON,

    Plaintiff,

v.

AUSTIN,

    Defendant.
_____/

Case No. 4:21-cv-12704
District Judge Shalina D. Kumar
Magistrate Judge Kimberly G. Altman

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT[1] (ECF No. 62)[2]**

I.    Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983. Plaintiff Darren Johnson (Johnson), proceeding *pro se*, has filed this lawsuit alleging violations of his Eighth Amendment rights related to the treatment of his thyroid condition. *See* ECF No. 1. Following motion practice, the only remaining defendant is Nurse Practitioner Kristen Austin (Austin), who was an employee of Corizon Health, Inc. during the relevant period. Under 28 U.S.C. § 636(b)(1), all pretrial matters were

---

[1] It is not clear why the motion is titled a motion for "partial" summary judgment as it appears to seek resolution of all remaining claims.

[2] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(1).

1

referred to the undersigned. (ECF No. 13).

Before the Court is Johnson's motion for partial summary judgment.[3] (ECF No. 62). The motion is fully briefed, (ECF Nos. 76, 80), and ready for consideration. For the reasons stated below, it is RECOMMENDED that Johnson's motion be DENIED.

## II. Background

### A. Johnson's Allegations

The undersigned summarized the allegations set forth in the complaint in the March 13, 2023 Report and Recommendation as follows:

> Johnson suffers from a thyroid condition of which defendants were all aware. His thyroid condition is managed with a medication called Synthroid.
>
> In July 2021, Johnson sent Austin a kite asking her to refill his Synthroid prescription. At that time, he was taking 0.2 mg of Synthroid once per day. Instead of responding to Johnson's message, Austin had one of her coworkers respond. Austin ignored Johnson even though she knew that he would suffer "severe health complications" including "severe pains" if he did not take 0.2 mg of Synthroid every day.

---

[3] Johnson previously moved for summary judgment against Austin. (ECF No. 36). This motion was denied without prejudice because proceedings had been stayed against Austin and the Court had not yet resolved Austin's pending motion to compel. (ECF No. 63, PageID.503-504). Further, under the scheduling order between Johnson and Austin, discovery closed on October 22, 2023, and dispositive motions were due by November 22, 2023. (ECF No. 58). Austin did not file a dispositive motion by this date. Given that the undersigned is recommending denying Johnson's motion for partial summary judgment, and discovery has closed, a separate certification of completion of pretrial matters will be entered on the docket.

Johnson filed a Step I grievance against Austin for ignoring his kite and failing to timely refill his Synthroid prescription. This grievance was rejected.

Sometime after this, Austin provided Johnson with a lower dose of Synthroid. Johnson objected to this change, but Austin told him that he would receive no medication if he refused to take the lower dose. Immediately after taking the reduced dose of Synthroid, Johnson began to have an "allergic reaction," causing him to break out in rashes and sores all over his body as well as experience pain in various body parts including his genitals and chest.

Johnson immediately reported these side effects to Austin, but Austin insisted that he needed to continue taking the lower dose of Synthroid. Johnson continued to do so for about a month. At that time, Johnson began experiencing worse side effects including blood in his urine and a heart attack.

After his heart attack, Johnson was taken to the hospital. His treating physician noted that his thyroid levels were elevated and gave him 0.4 mg of Synthroid. The physician told Johnson that if his thyroid levels had gotten any higher, then he likely would have ended up in a coma.

Johnson said that Austin acted unreasonably when she failed to run tests like an EKG to determine the cause of his chest pain. He also said that the pain in his penis and testicles continued to worsen, but that Austin nevertheless refused to provide any treatment even though a lack of treatment could have caused him to need to have his penis and testicles removed.

(ECF No. 50, PageID.405-407 (internal record citations and footnote omitted)).

### B. Johnson's Medical Records

Johnson attached five pages of medical records to his motion. (ECF No. 62, PageID.490-494). They are summarized below.

On July 26, 2021, Johnson sent a kite stating that his new thyroid medication

3

had "[a]ffected [his] mind state." (*Id.*, PageID.492). Johnson felt "high" and "off balance." (*Id.*). He requested "medication with no side effects." (*Id.*). He stated that he would "take the 200mg pills until you'll provide some pills that will not [a]ffect [his] body function." (*Id.*).

On August 8, 2021, Johnson sent a kite requesting that his Synthroid dosage be increased from 0.175 mg to 0.2 mg because the lower dosage was "caus[ing] sickness to [his] stomach." (*Id.*, PageID.491).

On August 10, 2021, Austin reviewed Johnson's chart. (*Id.*, PageID.493). She wrote: "Synthroid is dosed based on lab values not patient request. If [Johnson] is having 'multiple issues' he needs to be evaluated by nursing." (*Id.*).

On August 24, 2021, Austin evaluated Johnson.[4] (*Id.*, PageID.494). Johnson reported to Austin that

> when his Synthroid was switched to 175mcg from 200mcg he began to have acute testicular and penis pain. Notes that they became dry with skin cracking. Also had sharp pains in eyes, blurred vision with tearing of both eyes. No crusting, sore throat that requires him to drink more liquids with meals and that he feels his thinking is slower with difficulty remembering things. States he stopped taking meds about 3 weeks ago. Also reports having fatigue.

(*Id.*). The only abnormal finding on physical examination was dry skin on or near Johnson's testicles. (*Id.*).

---

[4] Only one page of this record was submitted to the Court, even though the record indicates that it is "Page 1 of 3." (ECF No. 62, PageID.494).

4

Also on August 24, 2021, Austin submitted a request for Johnson to undergo a thyroid scan at Henry Ford Allegiance Health to determine whether he needed radioactive iodine to treat his thyroid issues. (*Id.*, PageID.490). Johnson's levothyroxine (generic of Synthroid) dosage was listed as 0.2 mg at that time. (*Id.*).

### III. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court "views the evidence, all facts, and any inferences that may be drawn from the facts in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004).

"The moving party has the initial burden of proving that no genuine issue of material fact exists. . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotation marks omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact," the court may "consider the fact undisputed for purposes of the motion"). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving

party to set forth specific facts showing a triable issue.' " *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The fact that Johnson is *pro se* does not reduce his obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006). Additionally, "once a case has progressed to the summary judgment stage, as is true here, the liberal pleading standards under the Federal Rules are inapplicable." *J.H. v. Williamson Cnty.*, 951 F.3d 709, 722 (6th Cir. 2020) (quoting *Tucker v. Union of Needletrades, Indus., & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005)) (cleaned up).

## IV. Discussion

### A. Summary Judgment Burden

Johnson, as the plaintiff, has the burden of proving his claim that Austin was deliberately indifferent to his medical needs. "The moving party's initial burden [on a motion for summary judgment] differs depending on whether the non-movant or the movant bears the ultimate burden of proof on the issue on which summary judgment is sought." *Rouse v. Caruso*, No. CIV 06-10961, 2007 WL 909724, at *3 (E.D. Mich. Mar. 23, 2007). "[W]here the crucial issue is one on which the movant will bear the ultimate burden of proof at trial, summary judgment can be

6

entered only if the movant submits evidentiary materials to establish all of the elements of the claim or defense." *Id.* (internal quotation marks and citation omitted).

To succeed on his motion for summary judgment, Johnson must essentially meet the very high burden of showing that he would be entitled to a directed verdict at trial. *Id.* In other words, he must "demonstrate why the record is so one-sided as to rule out the prospect of a finding in favor of the non-movant on the claim." *United States v. Feldman*, 439 F. Supp. 3d 946, 951 (E.D. Mich. 2020). As will be explained, Johnson has failed to meet this standard.

B. Deliberate Indifference

1. Legal Standard

Under the Eighth Amendment, prisoners have a constitutional right to medical care. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Prison officials may not act with deliberate indifference to the medical needs of their prisoners. *Id.* at 104. An Eighth Amendment claim has two components, one objective and the other subjective. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2002).

Under the objective component, "the plaintiff must allege that the medical need at issue is 'sufficiently serious.' " *Comstock*, 273 F.3d at 702-03 (quoting *Farmer*, 511 U.S. at 834). In *Farmer*, the Court held that the objective test

7

requires that "the inmate show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834; *see also Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004). Under the subjective component, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock*, 273 F.3d at 703.

2. Application

As to the objective component, "Austin admits that hypothyroidism, cardiac arrest ('heart attack'), loss of vision, coma, and loss of genitalia, could be serious medical needs." (ECF No. 76, PageID.605). However, she argues that Johnson's medical records do not "show beyond an issue of fact that in July and August 2021, when treated by [ ] Austin, he had one or multiple serious medical need(s)." (*Id.*, PageID.605-606).

The selection of medical records submitted by Johnson do not establish many of the medical needs he alleges. At most the records suggest that he was experiencing symptoms related to his mental functioning, (ECF No. 62, PageID.492, 494), stomach pain, (*id.*, PageID.491), problems with his eyes, skin dryness in his genital area, increased thirst, and fatigue, (*id.*, PageID.494). Based on the limited records before the Court, it is unclear what if any of these symptoms

8

were connected to his thyroid issues, or the seriousness of the symptoms either individually or collectively.

With regard to the subjective component, Austin argues that at most Johnson has shown that he disagreed with her treatment of his medical issues. According to Austin, the submitted medical records demonstrate that she "prescribed [Johnson] thyroid medication, examined his symptoms, and referred him for further medical treatment." (ECF No. 76, PageID.610).

"When 'a doctor orders treatment consistent with the symptoms presented and then continues to monitor the patient's condition, an inference of deliberate indifference is unwarranted.' " *Rhinehart v. Scutt*, 894 F.3d 721, 743 (6th Cir. 2018) (citing *Self v. Crum*, 439 F.3d 1227, 1232-33 (10th Cir. 2006)). "Deliberate indifference is characterized by obduracy or wantonness—it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).

Here, Johnson has failed to show at this stage that his disagreement with his medical treatment rises to the level of deliberate indifference as a matter of law and that it was not instead a case where he disagreed with his medical provider's

9

course of treatment. At his August 24, 2021 appointment with Austin, Johnson told her what symptoms he was experiencing and she performed a physical examination. (ECF No. 62, PageID.494). Following the physical examination, the only abnormal finding that Austin noted was dry skin on or near Johnson's testicles. (*Id.*). Nonetheless, Austin submitted a request for Johnson to undergo a thyroid scan at Henry Ford Allegiance Health to determine whether he needed radioactive iodine to treat his thyroid issues. (*Id.*, PageID.490). The request record also indicates that Johnson's levothyroxine (generic of Synthroid) dosage was 0.2 mg, (*id.*), which was the dosage he had asked to be prescribed.

In sum, Johnson has not submitted evidentiary records for both components of a deliberate indifference claim so strong that no jury could rule in favor of Austin. Therefore, his motion for partial summary judgment should be denied.

V. Conclusion

For the reasons set forth above, the undersigned RECOMMENDS that Johnson's motion for partial summary judgment, (ECF No. 62), be DENIED.

Dated: January 2, 2024       s/Kimberly G. Altman
Detroit, Michigan      KIMBERLY G. ALTMAN
     United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as

provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

11

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 2, 2024.

                                         s/Carolyn Ciesla
                                         CAROLYN CIESLA
                                         Case Manager